## MIDDLETON *vs.* THE NEW JERSEY WEST LINE RAILROAD COMPANY.

1. The indebtedness of the West Line Railroad Company being more than double its assets; there being no income to meet the expense of the necessary repairs; its property being of such a character as materially to

deteriorate in value pending a protracted litigation; and it being clearly for the interest of all concerned in the property that it should be sold as early as possible, and almost all of the first mortgage bondholders represented by the trustees asking for the sale, the road and its franchises were ordered to be sold by the receiver, pending proceedings for foreclosure by trustees for the first mortgage bondholders, which disputes about the extent and validity of the mortgage lien threatened greatly to delay.

2. The property was directed to be sold free from all encumbrances, except a mortgage held by the public school fund of the state on lands under water.

3. The power of this court to sell the property of an insolvent corporation, free from encumbrances, (Nix. Dig. 409, § 24,) is not abridged by the dispute as to a mortgage being in reference to the extent to which it is an encumbrance, and not distinctly and solely as to its legality or validity; the legislature intended to include cases in which the objections are to the extent of the lien alone.

4. A power given by an act repealed in a revision, but which, by the revision, in the same instant that it was repealed, was immediately re-enacted, so that there was never a moment when the act repealed was not in force, is not taken away by the repealer.

On petition of the receiver for an order to sell the property, rights, and franchises of the company, free from encumbrances, and an order to show cause thereon; and also, on the petition of the trustees for the first mortgage bondholders, that the mortgaged premises be delivered over to them as mortgagees thereof.

*Mr. G. N. Abeel,* for the receiver.

*Mr. Joel Parker,* Attorney-General, for the commissioners for the school fund.

*Mr. J. F. McGee* and *Mr. Cortlandt Parker,* for the trustees for the first mortgage bondholders.

THE CHANCELLOR.

The receiver states in his petition, that the amount of the property and assets of the company does not exceed $1,200,-000, and that its indebtedness is over $2,600,000; that there

is no income derivable from the few miles of road which are completed and in use, to meet the expense of the repairs which are necessary to keep the road in proper running order ; and that there is a long stretch of trestle-work near Millburn, which is in a state of decay, and that the trestle-work on that part of the road which is in use, is also in need of repairs, which there are no funds to make. The property of the company is of such a character as will materially deteriorate in value, pending a protracted litigation. That it is now actually deteriorating in value, seems to admit of no doubt. Indeed, no question was made or suggested on that score, on the argument. Nor does it appear to admit of any question, that it is the interest of all concerned in the sale of that property, that it should be sold with as little delay as possible. I am unable to perceive the force of the suggestion made in behalf of the trustees, on the argument, that it would be more advantageous for those interested in the property, that the sale should be made under the proceedings for foreclosure instituted by the trustees. Prior to the former application made by the receiver for the sale of the property, the trustees had filed their bill to foreclose their mortgage, and therein had declared their option that the principal money secured by the mortgage should be due, and they thereby sought the sale of the mortgaged premises to raise and pay the whole amount accordingly. To their bill, answers have been filed, disputing the claim of the trustees as to the extent of the lien of the mortgage, and otherwise questioning its validity as an encumbrance. This has already given rise to considerable delay in that suit, and threatens to occasion much more. It is clearly for the interest of all concerned that the road and all its franchises should be sold together, and I see no reason why the sale should not be made without awaiting the termination of the foreclosure proceedings. Indeed, the holders of almost all of the bonds are before me by their counsel, and ask that the sale may be ordered.

There will be no practical difficulty in ascertaining the value of the franchise to build a road from Newark to Jersey

City, in case it should be decreed that the first mortgage does not cover that franchise. On behalf of the commissioners of the public school fund of the State of New Jersey, the Attorney-General protests against the sale, free of all encumbrances, of the land under water at Jersey City, on which they hold a mortgage for $82,000, and interest, for purchase money. Under the circumstances, I think the property and franchises should be sold, subject to that mortgage.

The counsel of the trustees insist, that the supplement (approved March 13th, 1866, *Nix. Dig.* 409,) to the act to prevent frauds by incorporated companies, does not authorize a sale, unless the validity of the mortgage as a lien, irrespective of the extent of its lien or encumbrance, is brought into question ; that to question the extent of its lien, is not to question its legality. The language of the act, which the revision has left substantially unchanged, is " where the property of an insolvent corporation, in the hands of a receiver or trustees, appointed under the act to which this is a supplement, is encumbered with mortgages or other liens, the legality of which is brought into question, and the property is of a character materially to deteriorate in value pending the litigation, thereupon the Court of Chancery may order such receiver or trustees to sell the same clear of encumbrances at public or private sale, for the best price that can be obtained, bringing the money into the Court of Chancery, there to remain subject to the same liens and equities of all parties in interest, as was the property before it was sold, and to be disposed of as the said court, by its decree, shall order and direct." The narrow construction which the counsel of the trustees seek to put upon the word " legality," is for very obvious reasons wholly inadmissible. To confine the meaning of the term, to objections to the instrument or proceeding under which the lien or encumbrance is claimed ; or, to state it perhaps more fairly, to exclude from its scope cases in which the objections are to the extent of the lien or encumbrance claimed alone, would be to do violence to settled principles of construction. The intention of the legislature is not obscure or doubtful. They

intended to authorize the sale of the property of an insolvent corporation, in the hands of a receiver or trustees, whenever it was liable materially to deteriorate during litigation which might ensue over disputed liens or encumbrances. The mischief was the depreciation of the property during protracted litigation to settle the rights of conflicting claimants of liens or encumbrances thereon. Such a case as that now before me is obviously within the mischief, and it is equally clear that it is within the scope and meaning of the act.

It is further urged, on behalf of the trustees, that the application of the act to the property mortgaged to them, will be in contravention of their constitutional rights in the premises. It is insisted that the act of 1866 was repealed in the revision of the laws, and that on such repeal the power given by it to this court was, of course, at an end; and that when the provision was re-enacted in the revision, their mortgage was not, by reason of the repealer, subject to it, and that they consequently cannot be affected by it, because of the constitutional prohibition forbidding the passage of any " bill depriving a party of any remedy for enforcing a contract which existed when the contract was made." The act of 1866 existed when the mortgage was made. The mortgagees took their lien subject to the provision of that act, and therefore subject to the power thereby given to this court over the mortgaged premises. The provision has never ceased to exist since the mortgage was made. Simultaneously with the repeal of the provision it was re-enacted, substantially without alteration. The repeal must be regarded as part of the means of revision merely, as a necessary formality for the substitution of the provision as revised, for the provision as it originally stood. The language of Chief Justice Shaw, in *Wright* v. *Oakley*, 5 *Metc.* 400, 406, is apposite. " In construing the revised statutes and the connected acts of amendment and repeal, it is necessary to observe great caution to avoid giving an effect to these acts which was never contemplated by the legislature. In terms, the whole body of the statute law was repealed;

but these repeals went into operation simultaneously with the revised statutes, which were substituted for them, and were intended to replace them, with such modifications as were intended to be made by that revision. There was no moment in which the repealing act stood in force without being replaced by the corresponding provisions of the revised statutes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of old laws, than as an abrogation of those old, and the re-enactment of new ones. In order to construe them correctly we must take the whole of the revised statutes, together with the act of amendment, and the repealing act, and consider them in reference to the known purposes which the legislature had in view in making the revision."

In *Steamship Co. v. Jolliffe*, 2 *Wall.* 450, like considerations were recognized in adjudicating upon the effect of the repeal of a particular law, which had been immediately re-enacted without substantial alteration. The court said: " The new act took effect simultaneously with the repeal of the first act; its provisions may, therefore, more properly be said to be substituted in the place of, and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them." In *Warren R. R. Co. v. Town of Belvidere*, 6 *Vroom* 584, the like discrimination is made. The court say: " Section 27 of the act (tax law) of 1866, although in words substantially the same as section 15 of the act of 1862, yet, with some variations, is only prospective in its operation, and does not reach past delinquencies, and is not a revision or continuation of section 15."

But, irrespective of these considerations, I do not see how, if it be conceded that the repeal worked the complete extinguishment of the provision, the constitutional right of the mortgagees can be said to be contravened, by applying the law as re-enacted to the mortgaged premises. The revised act merely re-invested this court with a power in respect to the property, which it had, by statute, when the mortgage

was made, and which it continued to have up to the time of the repeal.

The receiver will be ordered to sell the property at public sale free from all encumbrances, except the mortgage held by the commissioners of the school fund.

The petition of the trustees that the road be delivered over to them, will consequently be denied.